UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re

ULYSSES T. MOULTERIE,

                    Debtor.
----------------------------------------------------------x

Case No. 06-45102-CEC

Chapter 7

<u>DECISION</u>

APPEARANCES:

| | |
|---|---|
| Bruce Weiner, Esq. | Sean C. Serpe, Esq. |
| Rosenberg, Musso & Weiner, LLP | Pelton Serpe LLP |
| 26 Court Street, Suite 2211 | 111 Broadway, Floor 9 |
| Brooklyn, New York 11242 | New York, New York 10006 |
| Attorneys for Chapter 7 Trustee | Attorneys for Debtor |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

1

This matter comes before the Court on the motion of Robert J. Musso (the "Trustee"), the chapter 7 trustee in this case, to disallow the claimed homestead exemption of Ulysses T. Moulterie (the "Debtor") in property located at 81 Malcolm X Boulevard, Brooklyn, New York (the "Property").  Although he advances several arguments in support of his position, the Trustee's principal contention is that the Debtor's homestead exemption should be disallowed because the Debtor was not living at the Property when this bankruptcy case was commenced. The Debtor contends that he is entitled to claim the homestead exemption because his wife and children continue to reside at the Property, and there has been no final state court resolution of their matrimonial issues or their respective rights in the Property.  Tyheese Glenn-Moulterie ("Mrs. Moulterie"), the Debtor's wife, supports the Trustee's position.  An evidentiary hearing was held during which the Court heard testimony from Mrs. Moulterie, the Debtor, and the Debtor's sister, Elizabeth Moulterie.  For the following reasons, the Trustee's motion is denied.

<u>Jurisdiction</u>

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(b) and 157 and the Eastern District of New York standing order of reference dated August 28, 1986.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

<u>Background</u>

The following relevant facts are undisputed.

In 1999, the Property was owned by Mrs. Moulterie's grandmother.  By deed dated October 8, 1999, the Property was transferred to Mrs. Moulterie, with her grandmother retaining a life estate.  (Ex. 1.)  On May 18, 2001, another deed was executed conveying the Property in

fee simple absolute from Mrs. Moulterie's grandmother to Mrs. Moulterie.  (Ex. 2.)  This deed

provided that it was a "Correction Deed to the Deed dated October 8, 1999," and that the

grandmother's life estate "is terminated and void."  (Ex. 2.)  On May 18, 2001, Mrs. Moulterie

conveyed the Property to herself and Debtor.  (Ex. 3.)  The Property has since been refinanced

several times.

On October 31, 2005, the Debtor moved out, leaving Mrs. Moulterie and their five

children living at the Property.  In early 2006, after approximately 19 years of marriage, Mrs.

Moulterie initiated a divorce proceeding against the Debtor, which is currently pending in New

York State Supreme Court, Queens County.  In April 2006, Mrs. Moulterie and the children

moved into a homeless shelter temporarily.  (Tr.[1] at 77.)  On May 9, 2006, the state court granted

Mrs. Moulterie exclusive occupancy of the Property.  (Ex. 5 at 12.)  Thereafter, in September or

October 2006, Mrs. Moulterie and the children moved back into the Property.  (Tr. at 77.)  As of

the petition date, no judgment of divorce awarding final rights in or occupancy of the Property

had been entered.

On December 29, 2006, the Debtor filed a voluntary petition under chapter 7 of the

Bankruptcy Code, listing his address as 279 Macon Street, Apartment 4, Brooklyn, New York.

On Schedule C, the Debtor claimed a homestead exemption in the Property pursuant to New

York Civil Practice Law and Rules ("CPLR") § 5206(a).

On March 15, 2007, the Trustee commenced an adversary proceeding against the Debtor

and Mrs. Moulterie seeking authorization to sell the Property pursuant to Bankruptcy Code

---

[1] "Tr." refers to the transcript of the hearing held on August 19, 2008.

§ 363(h).  On May 8, 2007, the Debtor filed an answer to the complaint, and requested a 30-day

stay of the action to permit him and Mrs. Moulterie to come to an agreement regarding the

disposition of the Property.

On May 31, 2007, the Trustee filed this motion to disallow the Debtor's homestead

exemption in the Property.

<u>Legal Standard</u>

Exemption statutes are to be construed liberally in the favor of a debtor.  <u>In re Keil</u>, 88

F.2d 7, 8 (2d Cir. 1937); <u>In re Hunt</u>, 250 B.R. 482, 485 (Bankr. E.D.N.Y. 2000); <u>In re McNeill</u>,

193 B.R. 654, 659 (Bankr. E.D.N.Y. 1996); <u>In re Moore</u>, 177 B.R. 437, 441 (Bankr. N.D.N.Y.

1994); <u>In re Miller</u>, 167 B.R. 782, 783 (Bankr. S.D.N.Y. 1994); <u>In re Rundlett</u>, 153 B.R. 126, 130

(S.D.N.Y. 1993).  A party objecting to a debtor's exemption bears the burden of proof to show

that the exemption is improper.  Fed. R. Bankr. P. 4003(c).

Section 522(b) of the Bankruptcy Code provides that a debtor may exempt certain

property from the bankruptcy estate.  Section 522(b)(2) allows a state to opt out of the exemption

scheme set forth in § 522(d) of the Bankruptcy Code, and to require a debtor to utilize the

exemptions made available under state law.  11 U.S.C. § 522(b)(2).  Pursuant to this section,

New York has opted out of the federal exemption scheme, and accordingly, New York residents

are limited to exemptions set forth in the New York Debtor & Creditor Law.  N.Y. Debt. & Cred.

Law § 282.

Section 282 of the New York Debtor & Creditor Law provides that "an individual debtor

domiciled in this state may exempt from the property of the estate . . . personal and real property

exempt from application to the satisfaction of money judgments under sections fifty-two hundred

4

five and fifty-two hundred six of the civil practice law and rules."  N.Y. Debt. & Cred. Law §

282(i).

CPLR § 5206(a), in turn, provides that a "[lot of land with a dwelling thereon] not

exceeding fifty thousand dollars in value above liens and encumbrances, owned and occupied as

a principal residence, is exempt from application to the satisfaction of a money judgment, unless

the judgment was recovered wholly for the purchase price thereof."[2]  N.Y.  C.P.L.R. § 5206(a).

Discussion

A.  Occupancy

The Trustee and Mrs. Moulterie argue that the Debtor is not entitled to claim a homestead

exemption in the Property because it was not his principal residence on the date of filing.  They

assert that the Debtor voluntarily left the Property fourteen months prior to commencing this

bankruptcy case, and established a new principal residence.  The Debtor argues that he is entitled

to the exemption because his family continues to reside in the Property, and because he left due

to marital strife.

When determining the allowance of an exemption, a court must consider the

circumstances as they existed on the petition date.  In re Scott, 233 B.R. 32, 40 (Bankr. N.D.N.Y.

1998).  Courts have interpreted CPLR § 5206(a) to require "actual physical occupancy on a

regular basis," and, since a homeowner may only have one principal residence, the homestead

"must be occupied by the debtor on a more regular basis than any other residence."  Id.

---

[2] Although the statute allows for a $50,000 homestead exemption, the Debtor claimed a $10,000 homestead
exemption.  Pursuant to Bankruptcy Rule 1009(a), however, the Debtor may amend Schedule C to claim a $50,000
exemption.

Additionally, to establish a principal residence, a debtor must have an "intent to reside there permanently."  Id.

However, courts have held that the requirement that the property be "owned and occupied as a principal residence" by the debtor is satisfied when a debtor spouse leaves the principal marital residence, pending final resolution by the state courts of the spouses' respective property rights in the residence, while the debtor's family remains living there.  The rationale for recognizing the debtor's constructive occupancy of the marital residence in these circumstances was well explained in In re Smith, 57 B.R. 81, 82 (Bankr. N.D.N.Y. 1985):

> To read the word ["occupied"] literally would permit creditors to dismantle property rights of the parties to a matrimonial dispute before the State courts have the opportunity to act to safeguard those interests and, perhaps, even more important, the interests of any children of the marriage.  It would encourage, if not require, the often hostile parties to a matrimonial dispute to continue to share the marital abode on penalty of loss of property rights.  The potential for harm to a spouse or to children in such circumstances hardly need be elaborated upon.  In sum, literal reading of the word would not be consonant with strong, well-established, and long standing policies of the State of New York and hardly would have been within the intent of the Legislature.

Smith, 57 B.R. at 82.  Based on this, the court concluded that "the New York courts would not construe absence from the marital abode pending final resolution of property rights by its courts to constitute an abandonment of rights of residency or occupancy of a homestead under section 5206 of New York's Civil Practice Law and Rules."  Id. at 82-83.

Most bankruptcy courts addressing this question have reached the same conclusion.  See In re Miller, 103 B.R. 65, 67 (Bankr. N.D.N.Y. 1989); In re Pearlman, 54 B.R. 455, 457 (Bankr. S.D.N.Y. 1985); In re Warren, 38 B.R. 290, 293 (Bankr. N.D.N.Y. 1984); In re Thomas, 27 B.R.

367, 371 (Bankr. S.D.N.Y. 1983).  But see Dawson v. Krolikowski, 140 Misc. 2d 343, 350-352

(N.Y. Sup. Ct. 1988) (disallowing homestead exemption where the debtor left the marital

residence pursuant to a judgment of divorce granting the spouse and children exclusive use and

occupancy, stating that "a debtor's lack of occupancy for any . . . reason, not specified in CPLR

5206, does not serve to preserve a debtor's homestead exemption").

In some such cases, additional factors were present.  For example, in In re Thomas, the

bankruptcy court found the debtor had been abused by her husband, and had entered into an

agreement with him whereby he would retain exclusive occupancy of the house for a period of

two years.  Thomas, 27 B.R. at 368-369.  The Thomas court found that "[t]he terms of the

agreement [between the debtor and her husband] reflected [the husband's] insistence that he

would not be the one to vacate the home and his veiled threat that, should the debtor choose to

remain on the premises, she might be physically thrown out at his whim, as had been her

experience twice before."  Id. at 369.  The court concluded that disallowing the debtor's

exemption would be "extremely inequitable," and noted that in the event the debtor's husband

filed for bankruptcy, he would be entitled to claim the homestead exemption "because of his

cruel and violent behavior, the consequence of which was to drive the debtor out of her own

home."  Id. at 370.  The court further held that the debtor "should not be penalized for agreeing to

vacate the homestead property less than five months prior to filing her petition in a desperate

effort to find some emotional peace and physical safety."  Id.

In reaching its decision, the Thomas court also relied on First Federal Savings and Loan

Association of Rochester v. Brown, 434 N.Y.S.2d 306, 310 (N.Y. Sup. Ct. 1980), which stated

that "[t]he exemption of the land comprising the homestead is only an exemption from sale or

execution while the premises are occupied by the debtor or his family." Brown, 434 N.Y.S.2d at 310. The Thomas court allowed the debtor's exemption due to "extreme conditions under which she was forced to vacate the premise and because the premises [were] still occupied by the debtor's family (her husband)." Thomas, 27 B.R. at 371.

Courts have permitted a non-occupying debtor spouse to claim a homestead exemption in marital residence under less "extreme conditions" than those present in Thomas. For example, in In re Warren, approximately one year prior to the bankruptcy filing, the debtor voluntarily left the marital residence. Warren, 38 B.R. at 291. The debtor claimed that his absence was temporary, until he and his wife could resolve marital issues. Id. At the time of filing, the debtor had not returned to the marital residence, but had paid all the mortgage payments. Id. The debtor claimed a homestead exemption in the marital residence, and the trustee sought to disallow the exemption. Id.

In reaching its decision, the court in Warren noted that the homestead exemption "historically has been intended to protect the family of a judgment debtor by exempting his home from execution on an outstanding money judgment." Id. at 292 (citing Michaels v. Chem. Bank, 441 N.Y.S.2d 638, 640 (N.Y. Sup. Ct. 1981). Based on this purpose, and "to prevent an inequitable injury to the [d]ebtor and his family," the court allowed the debtor's homestead exemption, notwithstanding the debtor's non-occupancy, because the residence was occupied by the debtor's immediate family. Id. at 293.

Likewise, in In re Pearlman, the court permitted a debtor to claim a homestead exemption in the marital residence even though he did not occupy the property at the time of filing. Pearlman, 54 B.R. at 457. In that case, prior to the debtor's bankruptcy, the debtor and his wife

briefly separated, and, in furtherance of a reconciliation attempt, the debtor transferred his

interest in their cooperative apartment to his wife.  Id. at 455.  In exchange for the debtor's

interest, the wife agreed to co-sign a loan, the proceeds of which would be used to satisfy marital

debts.  Id.  However, the debtor's wife never co-signed the loan.  Id.  Thereafter, the debtor

vacated the marital home, and moved into another apartment in the same city.  Id.  The court

noted that, although the debtor wanted to reconcile with his wife, he asserted that he left the

apartment because he thought his continued presence in the marital apartment was

"psychologically harmful to his children and himself."  Id. at 456.  The debtor filed for

bankruptcy one month later.  Id.

Although the facts in Pearlman differed substantially from those in Thomas, the Pearlman

court found that "there was marital stress enough to prompt a physical separation."  Id. at 457.

The court stated that "someone had to vacate, and it was the debtor," id., and found that the

debtor's actions "did not rise to the level of a voluntary abandonment of the residence," id., at 457

n.2.

The Pearlman court, noting the difference between the circumstances in Warren, where

the debtor left the marital home temporarily, and the circumstances before it, where it was

unclear whether the debtor would return, concluded that this factor is not "pivotal" in the

determination whether the homestead exemption is allowable.  Id. at 457 n.4.  The court

concluded that the facts "virtually mirror[ed]" those in Warren, adopted the court's reasoning,

and, taking into consideration the exemption's purpose, allowed the debtor's homestead exemption because his family lived in the marital residence.  Id. at 457.[3]

From these cases, the following rule emerges: for the reasons articulated in Smith, where a married couple has separated, pending final resolution of their rights in the marital residence by state court, the spouse who has vacated the marital residence is entitled to claim a homestead exemption in the residence, so long as it is occupied by the other spouse.  This rule is consistent with the rationale of the exemption statute.  The purpose of recognizing the constructive occupancy of the premises by a nonresident spouse pending final determination of their rights therein is to insure that the separating spouses can obtain an orderly determination of those rights, and live separately in the interim, without forfeiting those rights, and to avoid the potential harm that would result from requiring "the often hostile parties to a matrimonial dispute to continue to share the marital abode on penalty of loss of property rights."  Smith, 57 B.R at 82. Under this rule, the parties' reasons for separating are not relevant, nor is it relevant whether the nonresident spouse intends to return.

However, if evidence of marital discord prompting the separation, or of the Debtor's intent to return to the Property, is necessary to invoke the rule, it is present in this case.  Although Mrs. Moulterie insists that she and the Debtor had "a very strong marriage" (Tr. at 48), she testified that she petitioned Family Court for child and spousal support in March 2005, before the divorce proceedings were initiated, because Mr. Moulterie had stopped paying the utility bills (Tr. at 26-27).  She further testified that housekeeping was another source of marital strife.  (Tr.

---

[3] The court noted the debtor's transfer of his interest in the apartment to his wife may ultimately preclude his homestead exemption, but considered the debtor's entitlement to the exemption because the parties' arguments were based on the premise that the transfer was invalid.  Pearlman, 54 B.R. at 456 n.1.

at 47.)  Mrs. Moulterie also testified that, after the Debtor vacated the Property, she had hoped they would attempt marriage counseling.  (Tr. at 33).

The Debtor testified that they "argued all the time" about "money, [and] her lack of care of the kids."  (Tr. at 72.)  He also expressed dissatisfaction with his wife's role as a stay at home mother, testifying that "she never did anything typical of a stay at home mom," and that "she never once did the laundry[,] she didn't cook[,] . . . she didn't wash dishes," and that he had to help her get the children ready for school.  (Tr. at 71.)  He testified that the house was an "absolute pigsty."  (Tr. at 73.)  The Debtor testified that he moved out of the Property for his "own state of mind" (Tr. 79) and that he could "no longer reside [there], given all the hostility, the name calling, and the provoking" (Tr. at 75-76).  He further testified that the 279 Macon Street apartment is his "temporary" address (Tr. at 75) and explained he used this address on his tax returns because Mrs. Moulterie was not giving him his mail after he left the Property (Tr. at 76).  Mr. Moulterie also testified that he hoped to win the right to exclusive occupancy of the Property and to raise his children there.  (Tr. at 89-90.)

It is apparent from the record made at the hearing that Mr. and Mrs. Moulterie separated as a result of marital difficulties and that their respective rights in the Property had not been finally determined at the time this case was commenced.  It is undisputed that the Debtor holds title to the Property together with Mrs. Moulterie, and that Mrs. Moulterie and their children were living at the Property at the time he filed for bankruptcy relief, and continue to do so. Therefore, the Debtor is entitled to claim a homestead exemption in the Property.

The Trustee argues that to recognize the Debtor's constructive occupancy of the Property would defeat the purpose of the exemption because, under the circumstances of this case,

allowing the exemption would not protect the Debtor's family.  He contends that allowance of the homestead exemption in this case "makes it more difficult for [Mrs. Moulterie] to settle the pending adversary proceeding . . . and jeopardizes her and her children's continued use of the Property."  (Trustee's Mem. of Law in Supp. at 5.)  The Trustee argues that, because he must take into consideration that any distribution to creditors from the settlement would be reduced by the exemption amount, he would need to settle the action for a greater amount than if the exemption is disallowed.

Section 363(h) of the Bankruptcy Code permits the sale of the estate's interest in property together with the interest of a co-owner of the property if, at the time of the commencement of the case, the debtor held an undivided interest in the property as a tenant in common, joint tenant or tenant by the entirety and if four conditions are met.  11 U.S.C. § 363(h).  Sale of the non-debtor's co-owner's interest in property may be authorized only if (1) partition in kind of the property among the estate and the co-owner is impracticable; (2) the estate would realize significantly less from a sale of the estate's undivided interest in the property than from a sale of the property free of the co-owner's interest; (3) the benefit to the estate from the property's sale outweighs any detriment to the co-owner; and (4) the property "is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power."  11 U.S.C. § 363(h)(1)-(4).

The burden of proving compliance with each of the four statutory conditions set forth in § 363(h) rests with the trustee.  Sapir v. Sartorius, 230 B.R. 650, 655 (S.D.N.Y. 1999); In re Levenhar, 30 B.R. 976, 979 (Bankr. E.D.N.Y. 1983).  Once the trustee makes out a prima facie case demonstrating that the estate would benefit from the sale of the residence, the burden shifts

to the defendant to present evidence of the detriment to the non-debtor spouse, or to rebut the

trustee's evidence of the value of the property.  Sapir, 230 B.R. at 656 (citing In re Grabowski,

137 B.R. 1, 3 (S.D.N.Y. 1992), aff'd without opinion, 970 F.2d 896 (2d Cir. 1992)).

Typically, disputes involving the sale of a marital residence pursuant to § 363(h) revolve

around the third prong of the statute, which requires a court to determine whether the benefit to

the estate from the sale of the property outweighs the detriment to the non-debtor spouse.  In

assessing the detriment to the co-owner from the sale of the property, the Second Circuit has held

that courts should consider both economic and non-economic factors.  Cmty. Nat'l Bank and

Trust Co. of N.Y. v. Persky (In re Persky), 893 F.2d 15, 20-21 (2d Cir. 1989).  The Second

Circuit noted, "[i]n another statutory setting the Supreme Court summed up the dilemma [Section

363(h)] poses stating that 'we are not blind to the fact that in practical terms financial

compensation may not always be a completely adequate substitute for a roof over one's head.'"

Id. at 21 (quoting United States v. Rodgers, 461 U.S. 677, 704 (1983)).  Therefore, a court will

consider other factors in determining the detriment to a non-debtor spouse, such as "actuarial

calculations on the life expectancies of the spouses, respective contributions to the purchase price

of the home, tax exemptions available on the property, prospects for acquiring a new home,

special physical or mental handicaps, and minor children living at home."  Id.

On this record, it is not possible to conclude that allowance of the Debtor's homestead

exemption defeats the purpose of protecting the interests of the Debtor's family.  Depending on

the amount of equity in the Property, and the amount of allowed unsecured claims, it is possible

that reduction of the proceeds that would be available to the Trustee for distribution to creditors

as a result of any sale by the $50,000 exemption would reduce the benefit to the estate of such

sale. Additionally, the allowance of the exemption enables the family unit as a whole to receive money not otherwise available; under § 522(c), Mrs. Moulterie can recover domestic support obligations, as defined in § 101(14A) of the Bankruptcy Code, from the Debtor's exempt assets. Therefore, this Court must reject the Trustee's argument that the allowance of the exemption in this case defeats its purpose.

The argument that the state court's award of exclusive occupancy of the Property to Mrs. Moulterie prevents the Debtor from claiming the homestead exemption is also unpersuasive. There is no evidence that occupancy was awarded on a permanent basis. To the contrary, it appears that occupancy was temporarily awarded because the divorce proceeding is pending and there was no pre-petition determination regarding equitable distribution of the Property. Any determination of equitable distribution of the marital assets was stayed pursuant to § 362(a) of the Bankruptcy Code upon the filing of this bankruptcy case.

B.  Gift of the Property to Mrs. Moulterie

The Trustee and Mrs. Moulterie argue that the Debtor may not claim a homestead exemption in the Property because it was a gift to Mrs. Moulterie from her grandmother, and therefore is separate property, and not marital property in which the Debtor has an interest. This argument undermines this motion and the pending § 363(h) action, because if the Debtor did not have an interest in the Property at the time this case commenced, then, pursuant to § 541 of the Bankruptcy Code, the estate lacks an interest in the Property as well. In any event, on this record, the argument must be rejected.

Under New York law, property gifted to one spouse constitutes separate property and is not subject to equitable distribution. N.Y. Dom. Rel. § 236(B)(1)(d)(1); Chiotti v. Chiotti, 12

A.D.3d 995, 996 (N.Y. App. Div. 2004). However, separate property later "titled in the joint names of the spouses is presumed to be marital property." <u>Chiotti</u>, 12 A.D.3d at 996. <u>See also</u> <u>Rosenkranse v. Rosenkranse</u>, 290 A.D.2d 685, 686 (N.Y. App. Div. 2002). A "party seeking to overcome the presumption of marital property bears the burden of proving that the property is separate." <u>Parkinson v. Parkinson</u>, 295 A.D.2d 909, 909 (N.Y. App. Div. 2002).

Even if the Property was a gift to Mrs. Moulterie and was separate property, it is presumed that the Property became marital property when Mrs. Moulterie conveyed it to "Ulysses Moulterie and Tyheese Glenn-Moulterie, his wife" (Ex. 3). <u>See</u> <u>Chiotti</u>, 12 A.D.3d at 996. Mrs. Moulterie testified that the transfer was made in order to obtain a home equity loan to enable them to renovate the Property, and that the loan proceeds were used, in part, to purchase a minivan, a computer, and two televisions. (Tr. at 15-16.) She further testified that the Debtor worked and paid the family's bills. (Tr. at 18.)

Even if the Property was gifted to her, Mrs. Moulterie's transfer of an interest in the Property to the Debtor in order to obtain the loan, which was intended to benefit the family as a whole, evidences an intention to share the Property equally with the Debtor, and therefore converted the Property from separate property to marital property. <u>See</u> <u>Clark v. Clark</u>, 257 A.D.2d 459, 459 (N.Y. App. Div. 1999); <u>Ullah v. Ullah</u>, 161 A.D.2d 699, 700 (N.Y. App. Div. 1990); <u>Brown v. Brown</u>, 148 A.D.2d 377, 382 (N.Y. App. Div. 1989). There is no evidence proving that Mrs. Moulterie did not intend to convert the Property to marital property or to share it equally with the Debtor, or that the Debtor was placed on the deed "only as a matter of convenience." <u>See</u> <u>Rosenkranse</u>, 290 A.D.2d at 686. Therefore, whether Mrs. Moulterie

originally received the Property as a gift does not affect the Debtor's right to claim an exemption in it.

C.  Dissipation of the Property's Value

Mrs. Moulterie argues that the Debtor does not have an interest in the Property because he "wastefully dissipated" its value.

Under New York law, "[w]here the wasteful dissipation of assets can be traced to a party's poor judgment, unwillingness or inability to manage, that portion of the amount dissipated must be charged against said party's equitable share." Strang v. Strang, 222 A.D.2d 975, 977-978 (N.Y. App. Div. 1995).

Although the Property was refinanced, no evidence has been presented that the Debtor engaged in the type of conduct that would reduce his interest in the Property.  There is also no evidence as to the Property's value.  Nor has evidence been presented that the Debtor dissipated any assets.  Mrs. Moulterie merely testified that she did not know what happened to the proceeds from the home equity loans.  (Tr. at 17.)  Even if the amount of the loans were charged against the Debtor's interest in the Property, there is no evidence that the value of his interest in the Property, thus reduced, would be less than the amount of his allowed exemption.  Therefore, this assertion, even if proven, provides no basis to disallow the Debtor's homestead exemption.

D.  Offset

Mrs. Moulterie argues that any interest the Debtor has in the Property must be offset against the amount the Debtor would owe Mrs. Moulterie for her share of the Debtor's law license that may be awarded upon its equitable distribution.

This argument is misplaced.  First of all, there has been no determination that the Debtor's law license is marital property subject to equitable distribution.  Moreover, the Debtor's interest in his law license, which he held at the time of the commencement of this bankruptcy case, is property of the estate.  11 U.S.C. § 541(a)(2).  Any claim that Mrs. Moulterie may have for equitable distribution is a general unsecured claim.  See Musso v. Ostashko, 468 F.3d 99, 108 (2d Cir. 2006) ("To the extent that the state court ultimately establishes an equitable distribution award in favor of a non-debtor spouse after the debtor spouse has filed for bankruptcy, that award transforms the non-debtor spouse into a creditor of the bankruptcy estate within the meaning of 11 U.S.C. § 101(10).").

To the extent that Mrs. Moulterie is determined to have a claim for "domestic support obligations," that claim may be entitled to priority under § 507(a)(1) of the Bankruptcy Code, and may be recoverable from the Debtor's exempt property pursuant to § 522(c).  See 11 U.S.C. §§ 101(14A) (defining "domestic support obligation"), 522(c)(1).  Even if Mrs. Moulterie is determined to have a claim for "domestic support obligations," that determination would not provide a basis for disallowing the Debtor's homestead exemption, though it might permit her to offset that claim against any distribution to which the Debtor would be entitled on account of his homestead exemption.  The extent of Mrs. Moulterie's rights to a claim for "domestic support obligations" could also be relevant when determining whether it is appropriate for the Trustee to sell the Property pursuant to § 363(h) of the Bankruptcy Code.

However, whether the Trustee may sell the Property pursuant to § 363(h) is not before the Court at this time.  Nor is Mrs. Moulterie's claim of offset against the Debtor's exemption before the Court.  The Debtor's interest in the Property has not been liquidated, and no fund currently

exists against which a claim for domestic support could be offset.  Mrs. Moulterie's claims, if any, for equitable distribution or for domestic support, provide no basis for disallowing the Debtor's exemption.

Conclusion

For the foregoing reasons, the Trustee's motion to disallow the Debtor's homestead exemption in the Property is denied.  A separate order will issue.

Dated: Brooklyn, New York
       December 23, 2008

*s/Carla E. Craig*
CARLA E. CRAIG
Chief United States Bankruptcy Judge